JACOBS, Appellant,

v.

BUDAK et al., Appellees.

[Cite as *Jacobs v. Budak,* 156 Ohio App.3d 160, 2004-Ohio-522.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2002–T–0088.

Decided Feb. 6, 2004.

---

Frank R. Bodor, for appellant.

Dennis Haines and Stephen M. Koslow, for appellees.

JUDITH A. CHRISTLEY, Judge.

{¶ 1} Appellant, Nancy S. Jacobs, appeals from a judgment entry of the Trumbull County Court of Common Pleas granting summary judgment in favor of appellees, Anthony Budak, Nicholas Border, Edward Politsky, and the International Union of Electronic Electrical Salaried Machine and Furniture Workers Local 717 AFL–CIO ("union"). For the following reasons, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

{¶ 2} Prior to our discussion of the relevant facts, we are inclined to note that for purposes of appeal the arguments relied upon by appellant are applicable to all appellees. Appellant's brief names all appellees within her analysis of this matter, rather than merely within the case caption. Moreover, although the vast majority of appellant's argumentation references only appellee Anthony Budak, these arguments are equally applicable to the other parties on appeal. At this time, we are unable to say that appellant's arguments were not raised against all appellees by clear implication. To hold otherwise would be a manifest injustice. This, however, by no means precludes the trial court from further addressing each defendant's individual liability on remand.

{¶ 3} That being said, the record discloses the following facts. Appellant and appellee, Anthony Budak ("Budak"), are employed at Delphi Electric Systems–Division of General Motors Corporation ("Delphi"). Appellant is a supervisor, and Budak is a member of the union.

{¶ 4} On August 14, 1998, appellant filed a complaint with the Trumbull County Court of Common Pleas. In her complaint, appellant stated a cause of action for libel per se and libel per quod. Appellant prayed for judgment against appellees, jointly and severally, in the sum of $500,000 for compensatory damages, $450,000 for punitive damages, and reasonable attorney fees and costs.

{¶ 5} Attached to appellant's complaint was a copy of an article written by Budak. The article was published in a newsletter sponsored by the union and was entitled "Midnight Cowgirl." It described the supposed procedures used by appellant to provide equalization records to Delphi employees.[1] Generally, the article alleged that the procedures employed by appellant did not conform to those set forth in the collective bargaining agreement. In the article, Budak maintained that appellant's failure to comply with the appropriate procedures, as established by the collective bargaining agreement, led to a costly and inefficient

---

1. During her deposition, appellant described the equalization records as a report that logged the overtime hours of every employee she supervised. The purpose of the equalization records was to equalize the availability of overtime hours among employees.

method by which Delphi employees could gain access to the equalization records. Moreover, the article stated that appellant found Delphi employees to be untrustworthy and compared her to a "midnight cow girl" who was attempting to "act like the Lone Ranger by creating, in essence a separate contract which suits herself."

{¶ 6} Appellant's complaint claimed that many of the article's statements were false and that she suffered mental anguish, humiliation, and great loss of professional standing and reputation as a result of the defamatory publication.

{¶ 7} On September 11, 1998, appellees filed a notice of removal in the United States District Court for the Northern District of Ohio, Eastern Division. Appellees' notice of removal asserted federal-question jurisdiction on the basis of federal preemption, pursuant to Section 301 of the Labor Relations Management Act ("LRMA"), Section 185, Title 29, U.S.Code.

{¶ 8} On January 19, 2000, the federal district court issued a judgment entry denying appellees' motion for reconsideration of an earlier order granting appellant leave to amend her complaint.[2] More important, the federal district court found that the grounds for removal to federal court were insufficient and remanded the matter to the Trumbull County Court of Common Pleas. Specifically, the federal district court found that appellant's libel claim did not require an interpretation of the collective bargaining agreement. Thus, appellant's claim was not preempted by Section 301 of the LMRA.

{¶ 9} Following discovery, appellees filed a motion for summary judgment. Appellees made the following arguments in support of their motion for summary judgment: (1) the article did not defame appellant, (2) appellant cannot prove actual malice, and (3) appellant's state law claims are preempted by Section 301 of the LMRA.

{¶ 10} Appellant countered by filing a brief in opposition to appellees' motion for summary judgment. Evidentiary material attached to the brief in opposition included appellant's answers to interrogatories, various deposition testimony, and the written minutes of an August 25, 1997 meeting between management and labor.

{¶ 11} On June 4, 2002, the trial court issued a judgment entry granting appellees' motion for summary judgment. The trial court determined that the article's statements constituted libel per quod. Accordingly, the trial court explained that for a libel per quod claim to succeed, appellant had the burden to plead and prove special damages. In doing so, the trial court found "no evidence

---

2. The subsequently filed amended complaint deleted a sentence alleging that appellees "falsely stated [appellant] is in violation of the IUE–GM contract."

which indicates that [appellees'] statements caused injury to [appellant's] reputation, or exposed her to public hatred, contempt, ridicule or the like. Mere harassment by unknown persons does not meet the requirement of ridicule, contempt or public hatred. Further, there is no evidence that [appellees'] statements adversely affected [appellant] in her trade or business. Additionally, [appellant] has failed to present facts for purposes of this motion, alleging the required special damages for an action in libel *per quod*."

{¶ 12} The trial court also found that appellant's claim for intentional infliction of emotional distress failed because appellant did not prove that appellees' conduct was extreme and outrageous.

{¶ 13} From this judgment, appellant filed a timely notice of appeal and sets forth the following assignment of error for our consideration:

{¶ 14} "The trial court erred and abused its discretion in sustaining appellees' motion for summary judgment. The United States district court already ruled that appellees' motion for summary judgment should be overruled before it remanded the case back to the state court. Appellant contends there are genuine issues of fact in controversy upon which reasonable minds can differ and which were recognized by the federal district court."

{¶ 15} Appellant's assignment of error contends that sufficient evidence was presented to establish that the article's statements were false and were made with actual malice. Furthermore, appellant maintains that the evidence also demonstrated the resulting harassment and ridicule by her co-workers adversely affected appellant's character, reputation, and stature at Delphi.[3]

 {¶ 16} Prior to addressing the merits of appellant's assignment of error, we will first set forth the appropriate standard of review. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Under Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is

---

**3.** We note that appellant's appellate brief cites the federal district court's January 19, 2000 judgment entry in an attempt to bolster her libel claim. Curiously, appellant states that this judgment entry denied a motion for summary judgment previously filed by appellees with the federal district court. An examination of the entry, however, reveals that the federal district court never rendered judgment on appellees' motion for summary judgment. Rather, the federal district court merely denied appellees' motion for reconsideration and remanded this matter to the Trumbull County Court of Common Pleas, as it was without federal-question jurisdiction to proceed. Accordingly, the federal district court's judgment entry is irrelevant to the issue before us, and our focus on review will be based upon the evidentiary material submitted by each party in support of their summary judgment claims.

adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56; *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197; *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 273, 617 N.E.2d 1068.

{¶ 17} Material facts are defined as facts that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. To ascertain what constitutes a genuine issue, the court must resolve whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Turner,* 67 Ohio St.3d at 340, 617 N.E.2d 1123.

{¶ 18} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Accordingly, the moving party must point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the burden to respond as provided in the rule, so as to demonstrate that there is no genuine issue of a material fact. Id. However, if the nonmoving party fails to meet this burden, then the trial court may enter summary judgment against that party. Id.

{¶ 19} As an initial matter, we note that appellant fails to address the trial court's dismissal of her intentional-infliction-of-emotional distress claim. App.R. 16(A)(7) provides that appellant shall include in his or her brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." See, also, Loc.R. 12(C)(4). In short, "[a]n appellate court is required to address only those issues that are both assigned as error and briefed." *Catalano v. Pisani* (1999), 134 Ohio App.3d 549, 552, 731 N.E.2d 738. Appellant has failed to provide this court with any argument or contentions to support a finding that the trial court erred by dismissing her claim for intentional infliction of emotional distress, and we will refrain from constructing such arguments or contentions on behalf of appellant.

{¶ 20} We will now turn our attention to appellant's assignment of error. Written defamation is referred to as libel. *Strussion v. Akron Beacon Journal Publishing Co.,* 9th Dist. No. 20833, 2002-Ohio-3200, 2002 WL 1371166,

at ¶ 18. Libel is generally defined as "a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *A & B–Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283.

{¶ 21} As with any libel claim, our initial inquiry is whether the alleged defamatory statements are opinion or fact. The First Amendment to the United States Constitution protects expressions of opinion and generally grants opinions absolute immunity from a defamation claim. *Scott v. The News–Herald* (1986), 25 Ohio St.3d 243, 250, 25 OBR 302, 496 N.E.2d 699. The protection of an author's written work is reinforced by Section 11, Article I of the Ohio Constitution, which provides:

{¶ 22} "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."

{¶ 23} That being said, the determination as to whether an alleged defamatory statement is an opinion or fact is a question of law for this court to resolve. *Scott*, 25 Ohio St.3d at 250, 25 OBR 302, 496 N.E.2d 699. Therefore, if we determine that the averred defamatory statements are opinion, then the First Amendment and the Ohio Constitution protect such statements from appellant's libel claim. On the other hand, if the statements are characterized as factual, then the First Amendment and Ohio Constitution offer no protection, and we will proceed with an analysis of appellant's libel claims.

{¶ 24} " 'When determining whether speech is protected opinion, a court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared.' " *Verich v. Vindicator Printing Co., Inc.*, 152 Ohio App.3d 127, 2003-Ohio-1210, 786 N.E.2d 945, at ¶ 12, quoting *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182, at syllabus. See, also, *Scott*, 25 Ohio St.3d at 250, 25 OBR 302, 496 N.E.2d 699.

{¶ 25} The following twelve statements were part of the article "Midnight Cowgirl" and are the specific statements that appellant claims to be libelous:

{¶ 26} "(1) Supervisor Nancy Jacobs, of the midnight labor gang has a different set of rules.

{¶ 27} "(2) Instead of entering the equalization hours against member's record on a daily basis (as page 143, Section 13.2 C *requires*) Jacobs likes to give out an 'equalization sheet' every Tuesday.

{¶ 28} "(3) You see, she does keep the record as provided by the contract but she will not post it—thereby creating a series of hoops that every Sister and Brother has to jump through in order to get accurate equalization information.

{¶ 29} "(4) Jacobs system works like this: the 717 member must call for Union representation, the representative has to request that Jacobs unlock her office. Then the Rep, the member and Jacobs proceed to a desk where she then allows the Representative and members see their requested equalization records. Talk about *complicated*. This system is unique to Jacobs and midnight.

{¶ 30} "(5) Jacobs adds that this is the way overtime has been administered for a long time and she will not change it for one individual.

{¶ 31} "(6) Jacobs excuse for her 'procedure' goes, that if the records were left out they will be subject to theft or alteration by 717 members.

{¶ 32} "(7) In effect she is saying that midnight workers, *all the people she works with*, are untrustworthy!

{¶ 33} "(8) I talked to Jacobs about this policy of hers at length * * *.

{¶ 34} "(9) This continued violation of our contract is simply unacceptable, and neither Jacobs nor anyone else has the right to ride herd on us, or act like the Lone Ranger by creating, in essence, a separate contract which suits herself.

{¶ 35} "(10) There are ways for Nancy Jacobs to correctly administer the agreements that are in everyone's interest. Given some research and creative thought Nancy can trust our IUE–GM contract and trust 717 members on midnight turn.

{¶ 36} "(11) Trusted Managers live-up to our agreements. We trust that the midnight labor gang will work with Jacobs and their Union Representatives to correct these serious problems in a positive and expedient way.

{¶ 37} "(12) Midnight Cowgirl."

{¶ 38} First, we must analyze the general context of the article. In *Vail*, the Supreme Court of Ohio found that the general context of the article at issue confirmed that the statements made were the author's written opinion. Id., 72 Ohio St.3d at 282, 649 N.E.2d 182. The underlying rationale of the court's finding was based upon the location of the article in the "forum" page of a newspaper and its title as "commentary." Id. The court explained, "The words 'forum' and 'commentary' convey a message that the reader of columns so designated will be exposed to the personal opinions of the writer. Such a column

is distinguished from a news story which should contain only statements of fact or quotes of others, but not the opinion of the writer of the story." Id.

{¶ 39} In the case at bar, the article by Budak is distinguishable from the article in *Vail*. Budak's article was part of a union newsletter that was disseminated to all union employees. The section under which this article appeared was entitled "Sub District 'B' Committee Report." Also, the majority of the articles accompanying the article conveyed general news reports of union-related events, including minimal language urging support for the union. Clearly, the general context of Budak's article would lead a reader to associate its contents with a news-related story rather than an opinionated commentary. As a result, the general context of the article demonstrates a factual basis.

{¶ 40} "Second, we must consider the full context of the statements. Is the column characterized as statements of objective facts or subjective hyperbole?" *Vail*, 72 Ohio St.3d at 282, 649 N.E.2d 182. In *Vail*, the court determined that the full context of the article established the alleged libelous statements as opinion. Id. Specifically, the court found the general tenor of the article in that case to be sarcastic and, therefore, more typical of persuasive speech than factual reporting. Id. Also, the court relied upon the article's "commentary" title and the author's reputation as an opinionated columnist. Id.

{¶ 41} As stated previously, Budak's article was part of a Union newsletter under a section entitled "Sub District 'B' Committee Report." Moreover, the accompanying articles, which were also written by Budak, contained union news-related events. Clearly, the focus of Budak's writings was to inform union employees of factual incidents that would affect their union representation.

{¶ 42} Furthermore, the article cannot be interpreted as subjective hyperbole. Budak's article details the procedures allegedly used by appellant and then compares her procedures to those outlined in the collective bargaining agreement. Included with the article were excerpts from a conversation Budak had with appellant regarding the procedures she employed. While the article attempted to persuasively encourage union employees and representatives to correct the alleged procedural problem, the overriding theme throughout the article was the use of factual allegations to demonstrate the abuse of access to equalization records. Thus, unlike *Vail*, the general tenor of the article in the instant case was more typical of factual reporting.

{¶ 43} "Third, the specific language used must be reviewed, focusing on the common meaning ascribed to the words by an ordinary reader. We must determine whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype and

opinion; whether the language has a readily ascertainable meaning or is ambiguous." *Vail,* 72 Ohio St.3d at 282, 649 N.E.2d 182.

{¶ 44} The common meaning ascribed to the language used in Budak's article demonstrates that a reasonable reader would view its words as conveying information of a factual nature. Throughout the article, Budak made specific, unambiguous factual allegations as to the procedures used by appellant to grant access to the equalization records. It can hardly be said that such language lacked precise meaning or would be understood by the ordinary reader as Budak's attempt to persuade public opinion. Thus, the specific language used by Budak conveyed information of a factual nature.

{¶ 45} "The final question is whether the statements are verifiable. Does the author imply that he has first-hand knowledge that substantiates the *opinions* he asserts?" (Emphasis added.) *Vail,* 72 Ohio St.3d at 283, 649 N.E.2d 182. Where the " '* * * statement lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content.' " *Scott,* 25 Ohio St.3d at 251–252, 25 OBR 302, 496 N.E.2d 699, quoting *Ollman v. Evans* (C.A.D.C.1984), 750 F.2d 970, 979.

{¶ 46} As mentioned previously, Mr. Budak's article included excerpts describing a conversation he had with appellant regarding the procedures used. In the article, Budak reported that during a conversation with appellant, she described the alleged procedures used as "sufficient to establish the basis for the week's overtime offers, regardless of what the contract states must be done." Budak also explained that appellant's "excuse" for using the alleged procedures he depicted in the article was to protect the equalization records from alteration or theft. In short, Budak used his conversation with appellant to imply his first-hand knowledge of the subject and verify his allegations of what procedures were employed. Thus, a reasonable reader would believe that the statements have specific factual content.

{¶ 47} After a thorough review of each specific statement, we find that statements 1 through 6 represent clearly verifiable facts. The specific language of each statement recited a factual description of the alleged procedures appellant used to grant Delphi employees access to equalization records. Each statement may be verified through evidentiary materials. In other words, the veracity of the statements may be proven via substantive evidence.

{¶ 48} Statements 7 through 12, however, are somewhat more ambiguous as to their verifiability. Each statement is a continuation of Budak's claims that appellant had employed procedures in contradiction to the collective bargaining agreement. These six statements represent a true mixture of opinion and fact. Nevertheless, Budak's underlying factual representations are inextricably intertwined with his conclusory opinions. Accordingly, his factual representations act

to substantiate and verify these six statements and would cause a reasonable reader to believe that such statements include specific factual content.

{¶ 49} The foregoing application of the totality of the circumstances test confirms that Budak's article and its contents depict factual representations and not protected opinions. Accordingly, we will proceed with our libel analysis.

{¶ 50} To prevail on a libel claim, a plaintiff must prove five elements: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory *per se* or caused special harm to the plaintiff." *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 206, 687 N.E.2d 481. We will now examine each element of libel to determine whether appellant produced evidence of the type listed in Civ.R. 56(C) to overcome appellees' motion for summary judgment.

{¶ 51} Regarding the first element, we note that "[i]n Ohio, truth is a complete defense to a claim for defamation. R.C. 2739.02 states: 'In an action for a libel or a slander, the defendant may allege and prove the truth of the matter charged as defamatory. *Proof of the truth thereof shall be considered a complete defense.*' * * *." *Ed Schory & Sons, Inc. v. Francis* (1996), 75 Ohio St.3d 433, 445, 662 N.E.2d 1074. In their motion for summary judgment, appellees argued that the factual statements regarding appellant's procedures were accurate and true. Thus, appellant was required to present evidence of the type listed in Civ.R. 56(C) to support a finding that the article's statements were false.

{¶ 52} Appellant submitted deposition testimony with her brief in opposition that indicates the article's statements describing the procedures used were in fact false. Throughout her deposition, appellant maintained that the procedures she employed were not based upon her own set of rules and that employees had full access to the equalization records:

{¶ 53} "A. Supervisor Nancy Jacobs of the midnight turn labor gang has a different set of rules.

{¶ 54} "Q. What is false about that statement?

{¶ 55} "A. I don't have a different set of rules.

{¶ 56} "* * *

{¶ 57} "Q. Okay. The next false statement.

{¶ 58} "A. It is also untrue that 'The representation had to request that Jacobs unlock her office.' The records are not kept in my office, and it is also untrue that 'The member and Jacobs were required to proceed to a desk in Jacobs'

office.' The equalization records are in the custody of the equalization clerk located in the maintenance office, which is and was unlocked, and the member is able to check records without my being present."

{¶ 59} Appellant reaffirmed her deposition testimony by answering appellees' interrogatories in a consistent fashion. Moreover, Budak's deposition testimony also revealed the possibility that certain written statements were false or inaccurate:

{¶ 60} "Q. In the article, you indicated that Nancy Jacobs was setting up her own set of rules, right? Did you check to see with management that as far as management was concerned, that that was in accordance with their rules?

{¶ 61} "A. Yes, sir.

{¶ 62} "Q. And what did they say?

{¶ 63} "A. That that's the way they do it."

{¶ 64} Appellant has set forth evidence demonstrating that the article's statements were possibly false. As a result, a genuine issue of material fact regarding the statements' veracity has been established.

{¶ 65} The first element of libel also requires the statements to be defamatory. "Defamation is defined as a false publication which injures a person's reputation." *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 117, 567 N.E.2d 253. As stated previously, appellant has demonstrated a genuine issue of material fact with regard to the article's veracity. She also presented evidence of harassment by co-workers subsequent to the article's publication. Such evidence confirms injury to appellant's reputation as a supervisor. Thus, for the purposes of summary judgment, the first element of libel has been satisfied.

{¶ 66} The second element of libel requires that the false and defamatory statement be about the plaintiff. Budak's article specifically names appellant as the subject of the article. Therefore, appellant has produced sufficient evidence to overcome appellees' motion for summary judgment with respect to the second element of libel.

{¶ 67} The third element of libel requires the statement to be published without privilege to a third party. During his deposition testimony, Budak explained that the union newsletter has a total circulation of 12,000 printed copies. Budak also stated that of those 12,000 printed copies, approximately 7,000 are distributed to union members. Furthermore, the union newsletter publication does not qualify as privileged material. Thus, for the purpose of defeating summary judgment, the third element of libel has been satisfied.

{¶ 68} The fourth element requires a determination as to the level of fault appellees' actions must rise to in order to sustain a claim of libel. The instant case presents us with what is best described as a labor dispute. " 'The term "labor dispute" includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether the disputants stand in the proximate relation of employer and employee.*' " (Emphasis sic.) *Dale,* 57 Ohio St.3d at 115, 567 N.E.2d 253, quoting Section 152[9], Title 29, U.S.Code.

{¶ 69} The dispute between appellant and appellees is based upon the procedures that appellant used to record and grant access to equalization records. The dispute originated from the union's collective bargaining agreement, which set forth the appropriate manner to record and grant access. In the article, Budak alleged that appellant had failed to comply with the provisions of the collective bargaining agreement, which required full accessibility to the records and daily recording of employees' overtime hours. Because this controversy concerns the maintaining of terms and conditions of employment as stated in the collective bargaining agreement, it is properly classified as a labor dispute.

{¶ 70} The appropriate level of fault required to sustain a libel claim in a labor dispute is actual malice. *Dale,* 57 Ohio St.3d at 117, 567 N.E.2d 253. A statement is published with actual malice when it is made with the " 'knowledge that it was false or with reckless disregard of whether it was false or not.' " *Dale,* 57 Ohio St.3d at 117, 567 N.E.2d 253, quoting *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686. Therefore, appellant was required to produce sufficient evidence showing that appellees acted with actual malice by publishing the article.

{¶ 71} Appellant has attached a copy of the written minutes of a meeting between union representatives and management representatives to her brief in opposition. This meeting occurred on August 27, 1997, just prior to the release of the article. Budak was one of the union members who attended the meeting. A portion of the recorded minutes stated that "MN [midnight] turn records equalization hours daily[,]" and "[e]mployees have access to their hours through the equalization clerk." Although these statements are vague, they do imply that those attending the meeting discussed the procedures used for equalization records and understood that equalization hours were recorded daily and employees had full access to these records. Moreover, Budak's deposition testimony reveals that he made no objection to the meeting's minutes:

{¶ 72} "Q. Did you at any time make any suggestions in the meetings with the management and the union to modify or amend the minutes which are dated 8–27–97?

{¶ 73} "A. No, sir.

{¶ 74} "Q. And if for some reason you thought those minutes were incorrect, you would have that prerogative, correct?

{¶ 75} "A. Yes, sir."

{¶ 76} The foregoing evidence demonstrates that, prior to releasing the article, appellees had at least some knowledge of the procedures used by appellant for recording and granting access to equalization records. Furthermore, such knowledge seems to be contradictory to the statements Budak published in the article. That being the case, appellant has produced enough evidence to create a genuine issue of material fact regarding whether appellees acted with actual malice, and summary judgment may not be granted on this basis.

{¶ 77} The fifth and final element queries whether the libel was either defamatory per se or caused special harm to the plaintiff. At this juncture, it is necessary to differentiate between libel per se and libel per quod. In *Becker v. Toulmin* (1956), 165 Ohio St. 549, 556, 60 O.O. 502, 138 N.E.2d 391, the Supreme Court of Ohio explained that "libel per se means libel of itself, or upon the face of a publication, whereas libel *per quod* is libel by an interpretation, through an innuendo, between an innocent or harmless meaning and a libelous one." See, also, *Shifflet v. Thomson Newspapers, Inc.* (1982), 69 Ohio St.2d 179, 186, 23 O.O.3d 205, 431 N.E.2d 1014.

{¶ 78} This distinction is relevant due to its effect upon the type of damages a plaintiff must prove resulted from the libel. Libel per quod is not actionable absent proof of special damages. *Shifflet,* 69 Ohio St.2d at 186, 23 O.O.3d 205, 431 N.E.2d 1014. "Special damages are those occasioned by the special character, condition, or circumstance of the person wronged. They are not presumed by the injury. They must be specially pleaded and must be proved by competent evidence." *Robb v. Lincoln Publishing* Co. (1996), 114 Ohio App.3d 595, 622, 683 N.E.2d 823.

{¶ 79} On the other hand, statements that are libelous per se presume the existence of damages and, thus, a plaintiff would not be required to plead and prove special damages. *Gosden,* 116 Ohio App.3d at 208, 687 N.E.2d 481. Specifically, "[w]ritten matter is libelous *per se* if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt; or in a manner that will injure him in his trade or profession." *Gosden,* 116 Ohio App.3d at 207, 687 N.E.2d 481, citing *Becker* at

553, 60 O.O. 502, 138 N.E.2d 391. "When a writing is not ambiguous, the question of whether it is libelous per se is for the court." *Gosden,* 116 Ohio App.3d at 207, 687 N.E.2d 481.

{¶ 80} Upon careful review, we find that the statements within Budak's article constitute libel per se. The statements at issue unambiguously and on their face reflected upon appellant's character as a supervisor. Specifically, the article portrayed appellant as a supervisor who refused to comply with the contractual obligations of the union's collective bargaining agreement. At no time did the article use innuendo requiring further interpretation of the statements' representations. To the contrary, the article went into great detail regarding appellant's alleged improper procedures and the consequences of her actions.

{¶ 81} Appellant submitted the following examples of workplace ridicule resulting from the article with her brief in opposition: (1) cow horns were tied to the handlebars of appellant's plant scooter; (2) numerous cat-calls and "mooing sounds" from employees were directed toward appellant as she walked through the plant; (3) appellant received numerous phone calls where unidentified persons yelled into the phone quips such as "yippy-ti-yi-o," "moo-ooo," and "got your spurs on"; and (4) a cowboy hat was placed on appellant's plant scooter. Furthermore, appellant's interrogatory answers list various prescription medications that were prescribed to alleviate stress-related ailments brought about by her co-worker's harassment.

{¶ 82} The evidence presented by appellant has created a genuine issue of material fact regarding whether appellant was subjected to ridicule as a result of the article. Also, because the article's statements are libel per se, appellant was not required to plead or prove special damages.

{¶ 83} Based upon the foregoing analysis, appellant has demonstrated that Budak's article was factual in nature and established a genuine issue of material fact for each element of libel via evidence of the type listed in Civ.R. 56(C). Thus, the trial court erred in granting summary judgment in favor of appellees. The judgment of the trial court is hereby reversed, and this matter is remanded for further proceedings in accordance with our decision.

*Judgment reversed*
*and cause remanded.*

DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.