OPINION
{¶ 1} Plaintiff-Appellants James C. White ("James") and Carline ("Carline") White appeal from the November 16, 2007 Final Judgment Entry of the Court of Common Pleas, Allen County, Ohio disposing of all claims contained in the original complaint filed against Defendant-Appellees Lima Auto Mall, Inc. ("Auto Mall") and GMAC, as well as a counterclaim filed by GMAC.
 {¶ 2} The record before this Court contains the original and amended pleadings, a motion filed by the Auto Mall to dismiss, and motions by both GMAC and the Auto Mall for summary judgment. Significant discovery was also conducted in this case, including depositions from the Whites, employees of the *Page 3 
Auto Mall, and employees of GMAC. Additional affidavits were supplied in support of various motions.
 {¶ 3} Drawing on all of the foregoing, the following facts emerge as leading to the filing of the complaint in this matter. James decided to purchase a new Cadillac for Carline. Apparently, James had purchased other vehicles from the Auto Mall and decided to go to the Auto Mall again to purchase a vehicle. James first visited the Auto Mall on February 16, 2005. Sometime between February 16 and February 21, 2005, James returned with his wife, Carline.[1]
 {¶ 4} Although the Whites found the type of vehicle they were looking for at the Auto Mall, the car the Auto Mall had in stock did not have all of the features they wanted. The Auto Mall indicated that a vehicle meeting the Whites' specifications could be located and shipped to the Auto Mall within several days. The contract to purchase the vehicle was executed on the afternoon of February 21, 2005, with the Auto Mall indicating that the vehicle would likely arrive at the dealership on February 22, 2005.
 {¶ 5} According to James, he requested the car be delivered to the Auto Mall by 1:30 p.m. on February 22, 2005 or in his words, "the deal was off." This *Page 4 
requirement, however, was not made a part of any written agreement. Moreover, no other person who was present at the Auto Mall when the contract for purchase was executed recalls such an explicit time requirement. Some employees of the Auto Mall indicated that James wanted the vehicle delivered on February 22, 2005, but none indicated that time was of the essence. Moreover, no one else recalled the explicit requirement that the car be ready by 1:30 p.m. on February 22, 2005.
 {¶ 6} The contract was executed while the Whites were working with two salespersons, Tim Barrows and Josh Robey. Barrows stated that prior to purchasing a car from another dealership for a customer, it is customary for the Auto Mall to either complete all of the paperwork, including the contract to purchase, or to get a non-refundable deposit from the customer. These precautions are utilized to assure that once the Auto Mall purchases a car from another dealer the buyer is actually going to purchase the car.
 {¶ 7} Barrows stated in his deposition that the Whites' car was at the dealership on the morning of February 22, 2005, but that it had been driven in from another dealership and was dirty. It appears that, at the Auto Mall, if a car was driven in, it was cleaned before the customer picked it up. Barrows stated that someone from the dealership phoned the Whites and spoke with Carline. During this conversation, Carline was informed that the vehicle was at the Auto Mall, but *Page 5 
that it was dirty. After the Auto Mall requested additional time, Carline gave the Auto Mall additional time to clean the car and inspect it.
 {¶ 8} James appeared at the Auto Mall early in the afternoon on February 22, 2005. Barrows stated that James appeared agitated and told the sales manager at the Auto Mall, Tod Rubel, that because the car vehicle was not ready, he was not taking the car. According to Barrows and Rubel, the car was at the Auto Mall, after arriving sometime on the morning of February 22, in the clean up area, and James could have taken possession of the car at that time. However, testimony indicates that James did not determine whether the car was on the premise before cancelling the contract. Moreover, James did not speak with either of the salespersons he had worked with in purchasing the car. He told the first person he came upon that he was cancelling the contract because the car was not ready and waiting.
 {¶ 9} After cancelling the deal with the Auto Mall, James went to another dealership and purchased a similar car. We note that some evidence exists in the record before this Court to suggest that James purchased a car from another dealership before actually canceling the contract with the Auto Mall. Attached to the Auto Mall's Motion for Citation in Contempt/Motion for Sanctions was an Odometer Disclosure Statement dated February 19, 2005 bearing Carline's signature. Moreover, there is an Application for Certificate of Title, dated *Page 6 
February 19, 2005 bearing Carline's signature, as well as the signature of a notary public stating that the signature was witnessed on February 19, 2005. Both of these documents were executed for the purchase of a Cadillac at a different dealership located in Celina, Ohio.
 {¶ 10} The car to be purchased from the Auto Mall was financed through GMAC financing. The finance documents were prepared and approved prior to the car being delivered to the Auto Mall. When James purchased a similar car from the dealership located in Celina, Ohio, that vehicle was also financed through GMAC. Because the Whites had good credit, the dual applications for financing did not raise any red flags.
 {¶ 11} GMAC did not learn that James attempted to cancel the deal with the Auto Mall until March 8, 2005, when James called GMAC and told them that the contract should have been voided because the dealer did not have the car when James wanted it and therefore, he never took possession of the vehicle.
 {¶ 12} GMAC then contacted the Auto Mall, who did not want to cancel the transaction because they had acquired a vehicle from another dealership for the Whites. After several attempts between the Auto Mall and GMAC to sort out the sale and financing, the car was treated as a repossession and sold at auction. A deficiency of $8,589.33 remained on the loan after the sale of the car. This *Page 7 
deficiency was noted on the Whites' credit report, as they never made any payments on the vehicle they contracted to purchase from the Auto Mall.
 {¶ 13} Based on these facts, on September 2, 2005 the Whites filed a Complaint for Money Damages and Punitive Damages with a Jury Demand in the Allen County Court of Common Pleas. In their Complaint, the Whites claim that the Auto Mall committed violations of R.C. 1345.02 and1345.03, fraud, and that GMAC is also liable for the Auto Mall's conduct. The Whites requested damages in the amount of what they claim is three times their actual damages, in the total amount of $102,026.52. When GMAC answered the White's Complaint, on October 28, 2005 it also instituted a Counterclaim for the balance of the loan on which the Whites defaulted.
 {¶ 14} On October 4, 2005 the Lima Auto Mall filed a motion to dismiss pursuant to Civ. R. 12(B). The Whites responded to the Auto Mall's Answer on November 8, 2005 and in the alternative, filed for leave to amend the original complaint. The Auto Mall filed a response on November 10, 2005. The trial court overruled the Auto Mall's motion to dismiss on November 15, 2005, giving the Whites two weeks to plead their claim with greater specificity, which they did on March 17, 2006. The amended complaint also contained an additional claim for defamation based on the negative remarks GMAC placed on the Whites' credit report. *Page 8 
 {¶ 15} On January 26, 2007 GMAC filed for summary judgment. The Auto Mall also filed for summary judgment on January 29, 2007. The Whites responded to GMAC's motion on February 26, 2007. The trial court overruled both motions for summary judgment on March 6, 2007.
 {¶ 16} On June 26, 2007 the Auto Mall moved the trial court to dismiss any claims for money damages. In its motion, the Auto Mall argued that under R.C. 1345 et seq., the Whites were not entitled to proceed with any claims for money damages or on any claims for fraud because the Whites had already elected to rescind the contract; thereby electing rescission as their remedy instead of damages.
 {¶ 17} On October 11, 2007 the trial court issued Orders dismissing part of the Whites' claims. Specifically, in its Orders, the trial court found as follows:
 As to Defendant, Lima Auto Mall, Inc.'s Motion for Partial Dismissal (Doc. #84), the same is well taken. Plaintiffs have plead [sic] for both rescission of the contract in question and an alternative claim of common law fraud. The remedies under O.R.C. 1345.09(A) and 1345.09(B) are in the alternative and not cumulative.
 The Court is aware of conflicting Ohio law on whether a plaintiff must chose [sic] their remedy under O.R.C. 1345.09 before trial. To remain consistent with O.R.C. 1345.09, and avoid any prejudice to the Defendants by potentially granting judgment for different and inconsistent remedies, we find that the Plaintiffs must chose [sic] their remedy under O.R.C. 1345.09 before trial. *Page 9 
 As pointed out by Defendants, the "Plaintiffs' Amended Complaint alleges that they `voided the contract' with the Defendants and that they `informed GMAC that the contract had been voided.'"
 Since Plaintiffs elected at the outset to rescind the contract, their claims relating to money damages based upon the contract under O.R.C. 1345 and/or claims of common-law fraud are dismissed.
 {¶ 18} The trial court entered a Final Judgment Entry on November 16, 2007. In its Entry, the trial court found as follows:
 This Court having ruled that Plaintiffs are not entitled to money damages on any claim and the remedy of rescission is the only relief available to them, as more fully discussed in the October 11, 2007 Order of this Court on the issues, all of which is incorporated in this Final Judgment Entry by reference, and the Defendants having stated to the Court that they do not oppose rescission, it is hereby ordered, adjudged and decreed:
 Final Judgment is awarded in favor of Plaintiffs and against Defendant Lima Auto Mall, Inc. on the first claim for violation of the Consumer Sales Practices Act, and in favor of Plaintiffs and against Defendant GMAC on the third claim for derivative liability on the complaint, and in favor of Plaintiffs and against Defendant GMAC on its counterclaim, and the transaction between the parties for the sale and financing of the 2005 Cadillac motor vehicle between Plaintiffs and Defendants is hereby Ordered rescinded in full. The Court having ruled that rescission is the only relief available to the [P]laintiffs, the Court finds all other claims moot and hereby dismisses same with prejudice. Costs to the Defendants.
 {¶ 19} The Whites now appeal asserting two assignments of error. *Page 10 
 ASSIGNMENT OF ERROR I WHEN A CONSUMER RIGHTFULLY REVOKES ACCEPTANCE, THERE IS NO TRANSACTION LEFT TO RESCIND AND DAMAGES ARE THE PROPER REMEDY.
 ASSIGNMENT OF ERROR II THE RELIEF FOR A CREDIT DISPARAGEMENT DAMAGE CLAIM STANDS INDEPENDENTLY OF THE RELIEF AVAILABLE FOR OTHER CLAIMS IN A CASE.
 {¶ 20} In its first assignment of error the Whites argue that because they revoked the transaction, rescission was not a proper remedy and therefore, they were entitled to damages.
 {¶ 21} When a matter from a trial court is appealed, the reviewing court gives great deference to the trial court's findings. Meade v.Nelson Auto Group (March 31, 1997), 3rd Dist. No. 14-96-45 citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273. The findings of the trial court will not be reversed absent an abuse of discretion. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 22} R.C. 1345.09 provides the relief available to a consumer with a cause of action under Chapter 1345 of the Revised Code. R.C. 1345.09
provides in pertinent part, as follows: *Page 11 
 For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:
 (A) Where the violation was an act prohibited by section 1345.02, 1345.03, or 1345.031 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages.
 {¶ 23} The Whites argue that the trial court improperly elected the remedy of rescission on their behalf because the contract had been revoked. They argue that if the contract was properly revoked, they would be entitled to both damages and the remedies attached to revocation. Revocation is defined by R.C. 1302.66 as follows:
 (A) A buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:
 (1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
 (2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
 (B) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
 (C) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them. *Page 12 
 {¶ 24} In support of their contention that the contract was revoked, the Whites rely on Brenner Marine, Inc. v. George Goudreau, Jr.Trust (January 13, 1995), 6th Dist. No. L-93-077. We find that the Whites' reliance on Brenner Marine is misplaced. In BrennerMarine, a clause in the contract for the purchase of a yacht provided that title to the yacht would not pass until the purchaser had taken the yacht on a trip and was satisfied with the yacht's performance.Id. While on this trip, the electrical equipment in the yacht caught fire, causing significant damage to the yacht. The electrical fire was subsequently determined to be the result of defective construction and modification by the seller of the yacht. Id. The circumstances ofBrenner Marine place the yacht purchase contract squarely within the scope of R.C. 1302.66.
 {¶ 25} In the present case, James never accepted delivery of the vehicle under the definition of acceptance provided by R.C. 1302.64. Here, James signed all of the paperwork entering into the contract to purchase the vehicle, but never took delivery of the vehicle. Moreover, if we turn to the pleadings, the Whites do not allege a defect in the vehicle. Instead it appears from their vague, amended pleadings, that because James' claimed delivery time was not included in the contract a violation of R.C. 1345.02 or 1345.03 occurred.
 {¶ 26} From the record before this Court, late delivery does not appear to be a situation where "non-conformity substantially impairs [the vehicle's] value." *Page 13 
R.C. 1302.66. Furthermore, nothing in the pleadings explained how, even if the vehicle was delivered late, the value of the vehicle was impaired. Therefore, we cannot find that the Whites properly revoked the contract they entered into with the Auto Mall.
 {¶ 27} Instead this case falls squarely with the remedies contemplated by R.C. 1345.09(A). "When a consumer files a claim under the OCSPA, R.C. 1345.09(A) allows either the recovery of damages or rescission of the transaction. The consumer elects the chosen relief prior to trial."Meade v. Nelson Auto Group (March 31, 1997), 3rd Dist. No. 14-96-45 citing Williams v. Banner Buick, Inc. (1989),60 Ohio App.3d 128, 130, 574 N.E.2d 579. See also Wenneman v. Sperano (May 3, 2001), 8th Dist. No. 77899.
 {¶ 28} Here, rescission was the appropriate remedy because the Whites did not follow through with this transaction, nor did they wish to complete the purchase of the vehicle from the Auto Mall.
 The remedies available to a private party alleging a violation of the Consumer Sales Practices Act are rescission of the transaction, recovery of damages, or, in some circumstances, recovery of treble damages. R.C. 1345.09. Regardless of whether in a particular case the consumer has a right to collect treble or only actual damages, the consumer is required to choose between an award of damages or rescission. The consumer is forced to choose between these remedies because "it is inconsistent to allow the consumer to rescind the contract while at the same time retaining rights in that contract and suing for damages." Mid-America Acceptance Co. v. *Page 14 Lightle (1989), 63 Ohio App.3d 590, 599, 579 N.E.2d 721, 727. As the court explained in Lightle, "only if the consumer elects to retain his rights under the contract may he recover three times his actual damages. However, if the consumer elects rescission, while he is entitled to be restored the amounts paid to the [violating] party, he is not entitled to three times that amount." Id.
 * * *
 Once the consumer has chosen to rescind, or cancel, the contract, he is not entitled to recover damages under the Consumer Sales Practices Act. The consumer cannot cancel the contract in one context and still claim a right to enforce it in another context.
Clemens v. Duwel (1995), 100 Ohio App.3d 423, 433, 654 N.E.2d 171.
 {¶ 29} Here, the Whites seek the inconsistent remedy of rescinding the contract, but still claiming damages under the contract. However, the Whites elected the remedy of rescission by not taking possession of the car. Specifically, we note the language of the complaint stating that the contract was "voided," which is inconsistent with the deposition testimony of James that he entered the Auto Mall on February 22, 2005 and stated the "deal was off." Therefore, the Whites cannot now claim damages based on the contract. If the Whites had taken possession of the vehicle, the trial court would perhaps be asked to determine whether the Whites were damaged through what James claims was the late delivery of the vehicle. *Page 15 
 {¶ 30} Therefore, we find that the trial court did not abuse its discretion, or act contrary to law when it found that the Whites had already elected the remedy of rescission.[2] Based on the foregoing, the Whites first assignment of error is overruled.
 {¶ 31} In their second assignment of error, the Whites argue that the trial court erred in holding that the Whites' credit disparagement claim was moot because the contract was held to be rescinded.
 {¶ 32} Written defamation is referred to as libel. Strussion v. AkronBeacon Journal Publishing Co., 9th Dist. No. 20833, 2002-Ohio-3200, at ¶ 18. Libel is generally defined as "a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." A B-Abell Elevator Co., Inc. v.Columbus/Central Ohio Bldg. Constr. Trades Council (1995),73 Ohio St.3d 1, 7, 651 N.E.2d 1283, 1995-Ohio-66.
 {¶ 33} To prevail on a libel claim, a plaintiff must prove five elements: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the *Page 16 
plaintiff." Gosden v. Louis (1996), 116 Ohio App.3d 195, 206,687 N.E.2d 481. Jacobs v. Budak (2004), 156 Ohio App.3d 160, 805 N.E.2d 111
 {¶ 34} "Libel per se means libel of itself, or upon the face of a publication, whereas libel per quod is libel by an interpretation, through an innuendo, between an innocent or harmless meaning and a libelous one." Becker v. Toulmin (1956), 165 Ohio St. 549, 556,138 N.E.2d 391. If a publication can by innuendo be construed to be either nonlibelous or libelous, the question may be submitted to a jury provided special damages have been pleaded and proved by the one claiming libel. There can be no maintenance of an action for libelper quod in the absence of proof of special damages. Id.
 {¶ 35} "Special damages are those occasioned by the special character, condition, or circumstance of the person wronged. They are not presumed by the injury. They must be specially pleaded and must be proved by competent evidence." Jacobs v. Budak, 156 Ohio App.3d at 176 citingRobb v. Lincoln Publishing Co. (1996), 114 Ohio App.3d 595, 622,683 N.E.2d 823.
 {¶ 36} In the present case, the Whites did not provide any allegation of the specific harm they suffered as a result of the alleged credit disparagement. The Whites claimed, in their pleading that "Defendant GMAC has knowingly caused to be published false and defamatory statements against the Plaintiffs consisting of *Page 17 
a report filed with credit bureau reporting services." However, the Whites presented no further allegation or testimony on this element.
 {¶ 37} Furthermore, although the Whites supplied the trial court with the affidavit of Robert L. Temple, President and CEO of the Mt. Victory State Bank, the information provided therein is purely speculative. Temple stated in his affidavit that he reviewed the credit report of the Whites after GMAC repossessed the vehicle, sold it, and placed negative comments on the credit report relating to the $8,589.33 balance remaining on the car loan. Temple concluded that the Whites would have a significantly more difficult time obtaining credit with the negative remarks on their credit report. However, Temple was not able to cite to any applications for credit that had been made since those remarks had been placed on the report. Moreover, no one was able to provide any actual measure of damages resulting from the negative remarks on the Whites' credit report. Without any figures providing any measure of actual damages the Whites suffered, we find that the Whites did not plead or otherwise establish a prima facie claim for special damages as required on a claim for libel pro quod.
 {¶ 38} We do note, however, that the language of the trial court's entry dismissed these claims as moot along with the claims for damages under R.C. 1345.09. Although the claims for damages were moot because the Whites elected *Page 18 
to rescind the contract, it is our view that the claim for credit disparagement was not necessarily moot.
 {¶ 39} However, because the Whites did not properly plead or otherwise establish any claim for special damages on their libel claim, it is our conclusion that the resulting dismissal would have been appropriate, on the record, regardless of how the trial court reached the result. The trial court had before it, during the course of this case, motions for both summary judgment and dismissal under Civ. R. 12(B)(6).
 {¶ 40} The trial court could have properly granted summary judgment if it found (1) that there were no genuine issues of material fact, (2) that GMAC was entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C); seeHorton v. Harwich Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, 1995-Ohio-286, paragraph three of the syllabus. Thus, in the case sub judice, where the credit disparagement claim did not plead special damages, and no evidence was introduced sufficient to raise any genuine issue of material fact as to special damages, summary judgment would have been appropriate.
 {¶ 41} Additionally, GMAC and the Auto Mall both filed multiple motions to dismiss. For dismissal under Civ. R. 12(B)(6) "it must appear beyond doubt *Page 19 
that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." Leroy v. Allen, Yurasek, Merklin, 114 Ohio St.3d 323, 872 N.E.2d 254, 2007-Ohio-3608, at ¶ 14, citing Doe v. Archdiocese of Cincinnati, 109 Ohio St.3d 491,849 N.E.2d 268, 2006-Ohio-2625, ¶ 11. In the present case, it does not appear that the Whites had applied for any credit in the time between the placement of negative remarks on their credit report and the filing of this claim. Therefore, there were no special damages arising from the credit disparagement claim to be pled. Again, in the absence of such a pleading a Civ. R. 12(B)(6) dismissal would have been appropriate.
 {¶ 42} Finally, only loss not cured by the cancellation of a contract is subject to damages where a party rescinds a contract. Sabbatis v.Burkey (2006), 166 Ohio App.3d 739, 853 N.E.2d 329, 2006-Ohio-2395. In order to prevail on this claim, the Whites would not only have to prove special damages, but present some evidence that the disparaging remarks were not removed after the contract was rescinded before any special damages could occur. None of this was done in this case.
 {¶ 43} Accordingly, regardless of the mode the trial court used to dismiss the Whites' credit disparagement claim, the result would be the same. Based on the pleadings and evidence, we cannot find that the trial court abused its discretion *Page 20 
or acted in a way that was contrary to law. Accordingly, the Whites' second assignment of error is overruled.
 {¶ 44} Based on the foregoing, the November 16, 2007 Final Judgment Entry of the Court of Common Pleas, Allen County, Ohio is affirmed.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] All of the testimony presented is highly inconsistent as to when and how often the Whites visited the Auto Mall after February 16, 2005. Testimony is also unclear as to whether James and Carline were together or went separately.
[2] We note that in the Whites' reply brief they attempt to allege a violation of the Motor Vehicle Sales Rule, codified at OAC109:4-3-16(B)(22). This claim, however, was never raised before the trial court and therefore, we do not address it in addressing this assignment of error. *Page 1