OPINION
{¶ 1} This is an accelerated calendar case. Appellants, Ralph Malloy, Thomas R. Watts, Jr., Ashley Algiers, Marvin Sweitzer, and Ohio Council 8 and Local 3356, American Federation of State, County, and Municipal Employees, AFL-CIO ("the union"), appeal the judgment entered by the Trumbull County Court of Common Pleas. The trial court dismissed appellants' complaint pursuant to Civ.R. 12(B)(6).
 {¶ 2} At all times relevant, the union had a collective bargaining agreement ("CBA") with appellee, the city of Girard ("the city"). The union filed a class-action grievance alleging that the city violated the CBA by laying off full-time employees while maintaining the services of certain part-time employees. The matter was submitted to binding arbitration. In December 2002, the arbitrator issued an award, finding that the city violated the CBA by its practices. The arbitrator ordered the city to cease and desist its practices and to lay off employees in accordance with the CBA.
 {¶ 3} The city filed an application to vacate the arbitration award in the trial court. However, the application was not timely filed; thus, the trial court dismissed the city's application to vacate the arbitration award. In addition, the trial court confirmed the arbitration award. The city appealed the trial court's judgment entry to this court. The trial court's judgment entry dismissing the city's application to vacate the arbitration award and confirming the arbitration award was affirmed by this court.[1]
 {¶ 4} On September 9, 2005, appellants filed a complaint in mandamus, for a preliminary and permanent injunction, and to cite the city in contempt. Thereafter, appellants filed an amended complaint, which asserted the same causes of action. Essentially, appellants argued that the city violated the arbitration award by not returning the laid-off, full-time employees to work. The amended complaint sought back pay and reinstatement for the employees. Appellants attached several documents to their amended complaint, including a copy of the CBA, a copy of the arbitrator's award, and copies of the judgment entries from the trial court and this court confirming that award.
 {¶ 5} The city filed a motion to dismiss appellants' complaint for failure to state a claim upon which relief can be granted, pursuant to Civ.R. 12(B)(6). Appellants' filed a motion in opposition to the city's motion to dismiss. The trial court granted the city's motion to dismiss.
 {¶ 6} Appellants raise five assignments of error. These assigned errors will be addressed out of sequential order. Appellants' first assignment of error is:
 {¶ 7} "The common pleas court erred in granting appellees' Civil Rule 12(B)(6) motion to dismiss appellants' complaint in mandamus; complaint for preliminary and/or permanent injunctions; for damages; and complaint to cite appellees for contempt."
 {¶ 8} An appellate court's standard of review for a trial court's actions regarding a motion to dismiss is de novo.[2] Thus, we will review this motion as the trial court did. The Supreme Court of Ohio has held the following in regard to a motion to dismiss:
 {¶ 9} "Dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate if, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in relator's favor, it appears beyond doubt that relator can prove no set of facts warranting relief."[3]
 {¶ 10} We note that "Ohio is a notice-pleading state."[4] Thus, "a complaint need only contain `a short and plain statement of the claim showing that the party is entitled to relief.'"[5]
 {¶ 11} Appellants' amended complaint sought a writ of mandamus ordering the reinstatement and payment of back wages to the laid-off employees.
 {¶ 12} "In order to be entitled to the writ of mandamus, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of respondents to provide it, and the lack of an adequate remedy in the ordinary course of the law."[6]
 {¶ 13} In addition, appellants' amended complaint asked that the city be held in contempt for its failure to adhere to the arbitration award.
 {¶ 14} "A person guilty of any of the following acts may be punished as for a contempt:
 {¶ 15} "(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer[.]"[7]
 {¶ 16} Once an arbitration award is confirmed by a court, a contempt action is a viable channel to seek compliance with the award.[8] In the contempt proceeding, the trial court hears new evidence regarding the party's actions following the date of the order to determine if the party properly complied with the order.[9]
 {¶ 17} Appellants' amended complaint also sought injunctive relief.
 {¶ 18} "In general, a party seeking injunctive relief must establish the following elements: (1) the defendant committed a wrongful act; (2) the plaintiff has no adequate remedy at law; (3) the harm to the plaintiff, if the injunction is not issued, clearly outweighs the harm which the injunction would do to the defendant and innocent third parties; and (4) the public interest would be served by the granting the injunctive relief."[10]
 {¶ 19} While we recognize that the causes of action for a writ of mandamus, contempt, and injunctive relief are separate legal concepts, we will address them in a consolidated analysis. Basically, this case boils down to the following questions: (1) did the arbitrator's award mandate action on behalf of the city, and, if it did, (2) is the city in violation of the arbitrator's award due to its failure to comply with the order?
 {¶ 20} Initially, we will determine whether the arbitrator's award mandated the city to do anything. The award section of the arbitrator's decision provided, in its entirety:
 {¶ 21} "The grievance is arbitrable. The City violated Article 8, Section 5 of the Agreement when it made the determination to lay off full-time employees while maintaining the services of part-time employees. The City is directed to cease and desist from this procedure, and is directed to lay off employees in accordance with Article 8, Section 5, of the Agreement."
 {¶ 22} The CBA contains a specific procedure for the order in which employees are to be laid off if lay offs are necessary. That order is set forth in Article 8, Section 5, of the CBA, which provides, in part:
 {¶ 23} "1. All part-time, seasonal and temporary employees * * * ;
 {¶ 24} "2. Employees who have not completed their new hire probationary period;
 {¶ 25} "3. Employees who have completed their new hire probationary period, [based on seniority.]"
 {¶ 26} The city was ordered to cease and desist the practice of "maintaining the services of part-time employees" while full-time employees were laid off. "Cease and desist" means to discontinue the conduct.[11] Thus, following the arbitrator's award, the city would have been in violation of the award every day that part-time employees continued to be employed while full-time employees remained laid off.
 {¶ 27} Further, the arbitrator's award instructed the city to "start over" its lay-off procedure. After telling the city to stop the noncompliant procedure it had engaged in, the award instructed the city to "lay off employees in accordance with [the CBA.]" Also, in the body of his decision, the arbitrator stated, "[a]t this specific time, there is an Agreement, and such provision found in Article 8, Section 5 needs to be adhered to by both parties." This language is in the present tense. The arbitrator wanted the city to lay off employees in the manner prescribed in the CBA. The city argues that the award was only meant to be prospective in nature. However, the language does not say, "in the future, if additional lay offs are necessary, the city is to comply with the CBA." Rather, the arbitrator mandated that the city comply with the CBA at that time.
 {¶ 28} The city could have engaged in three different practices to comply with the arbitrator's award. First, it could have recalled the laid-off, full-time employees and chosen not to lay off any employees. Second, it could have recalled the full-time employees and laid off some or all of the part-time employees. Third, after all of the part-time employees were laid off, it could have laid off full-time employees, based on seniority, including the employees at issue in this action. The bottom line is, no full-time employee was to be on "laid off" status while a less senior full-time employee, or any part-time employee, was still actively employed by the city.
 {¶ 29} Also, in Article 8, Section 5, the CBA contains a "call back" procedure, by which laid-off employees are entitled to be recalled, in the reverse order that they were laid off, prior to any new employee being hired. The city argues that the arbitrator's award was only prospective in nature, thus, it would not apply to the laid-off employees at the focus of this action. We disagree. The call-back list in the CBA dictates that laid-off employees still have rights under the CBA. Contrary to the city's position, the named employees were not "moot" once they were laid off. Rather, the CBA's language provided that they still had rights and standing to pursue their jobs.
 {¶ 30} We acknowledge the arbitrator's award did not specifically order the city to reinstate the full-time employees. There is a rational reason for this omission. The arbitrator's award instructed the city to lay off employees in accordance with the CBA. Had the city done this, and laid off employees in the order of (1) part-time employees, (2) full-time employees on the probationary period, and, then, (3) full-time employees who have completed their probationary period, the individually named full-time employees could still have been subject to a lay off. If there was an arbitration award specifically calling for the reinstatement of employee X, and the city properly laid off employee X (after following the proper lay-off order), employee X would no doubt seek legal action to enforce his reinstatement, even though he or she would have been permissibly laid off in accordance with the CBA and the arbitrator's award.
 {¶ 31} The arbitrator's award clearly mandated that the city correct its violation of the CBA by laying off employees in accordance with the CBA. This required affirmative action on the city's behalf to ensure that it was in compliance with the CBA following the arbitrator's award.
 {¶ 32} Next, we turn to the question of whether appellants' amended complaint sufficiently alleged that the city violated the arbitration award. The amended complaint generally alleged that the city failed to comply with the arbitrator's award. Moreover, it specifically asserted that the named, laid-off, full-time employees had not been returned to work. Further, in their response to the city's motion to dismiss, appellants assert that part-time employees were never laid off by the city. If proven, these events, taken together, could support a finding that the city violated the arbitration award.
 {¶ 33} Appellants' amended complaint alleged sufficient facts to survive the city's Civ.R. 12(B)(6) motion to dismiss.
 {¶ 34} Appellants' first assignment of error has merit.
 {¶ 35} Appellants' second and fourth assignments of error will be addressed together. These assignments of error are:
 {¶ 36} "[2] The common pleas court erred by failing to issue a writ of mandamus and otherwise order relief for appellants for appellees' continued refusal to comply with the arbitration award at issue.
 {¶ 37} "[4.] The trial court abused its discretion and committed reversible error by failing to issue an injunction and otherwise grant the relief requested by appellants."
 {¶ 38} We have found merit in appellants' first assignment of error. The trial court erred when it dismissed appellants' amended complaint.
 {¶ 39} While we conclude that appellants' amended complaint contains sufficient allegations to survive a Civ.R. 12(B)(6) motion to dismiss, appellants are not, at this point in time, entitled to judgment as a matter of law. Although appellants have alleged that the city failed to comply with the arbitrator's award, they have not yet proven those allegations.
 {¶ 40} This matter is remanded to the trial court's docket. Unless the parties file additional motions that resolve this case, such as a motion for summary judgment, this matter shall proceed to trial, where evidence can be presented on the issues raised in appellants' amended complaint. Thereafter, if it is determined that the city violated the arbitrator's award, the trier of facts shall determine what remedies to award appellants.
 {¶ 41} Appellants' second and fourth assignments of error are without merit.
 {¶ 42} Appellants' third assignment of error is:
 {¶ 43} The trial court abused its discretion and committed reversible error by dismissing appellants' contempt charges without first conducting a hearing."
 {¶ 44} Pursuant to our analysis of appellants' first assignment of error, we are reversing the trial court's dismissal of appellants' amended complaint. Further, pursuant to our analysis of appellants' second and fourth assignments of error, this matter is being remanded to the trial court, where an evidentiary trial is anticipated.
 {¶ 45} Thus, this assignment of error is not ripe for review at this time.
 {¶ 46} Appellants' fifth assignment of error is:
 {¶ 47} "In dismissing the complaint and failing to issue the relief requested by appellants below, the trial court failed to effectuate the policy favoring and encouraging arbitration."
 {¶ 48} In this assignment of error, appellants advance several public policy arguments regarding the enforceability of arbitration awards. The city asserts that it is in agreement with these general propositions. In light of our prior analysis, this assignment of error does not need to be addressed by this court at this time.[12]
 {¶ 49} Appellants' fifth assignment of error is moot.
 {¶ 50} The judgment of the trial court is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.
COLLEEN MARY OTOOLE, concurs, DIANE V. GRENDELL, J., dissents with Dissenting Opinion.
[1] Girard v. AFSCME Ohio Council 8, Local Union 3356, 11th Dist. No. 2003-T-0098, 2004-Ohio-7230.
[2] Clark v. Alberini (Dec. 14, 2001), 11th Dist. No. 2001-T-0015, 2001 Ohio App. LEXIS 5665, at *4.
[3] (Citation omitted.) Clark v. Connor (1998), 82 Ohio St.3d 309,311.
[4] Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St.3d 416,2002-Ohio-2480, at ¶ 29.
[5] Id., quoting Civ.R. 8(A)(1).
[6] State ex rel. Steele v. Morhsey, 103 Ohio St.3d 355,2004-Ohio-4960, at ¶ 16, citing State ex rel. Moore v. Malone,96 Ohio St.3d 417, 2002-Ohio-4821, at ¶ 20.
[7] R.C. 2705.02.
[8] See, e.g., Ohio Patrolmen's Benevolent Assn. v. Cuyahoga Cty.Sheriff, 8th Dist. No. 82238, 2003-Ohio-4349, at TJ9-12 and Erie Cty.Sheriff v. Fraternal Order of Police, 6th Dist. No. E-01-042, 2002-Ohio-3991, at ¶ 13-14.
[9] Ohio Patrolmen's Benevolent Assn. v. Cuyahoga Cty. Sheriff, at If 11 and Erie Cty. Sheriff v. Fraternal Order of Police, at ¶ 13.
[10] (Emphasis in original.) West v. Sheets, 11th Dist. No. 2001-L-183, 2002-Ohio-7143, at ¶ 11, citing Rite Aid of Ohio, Inc. v.Marc's Variety Store, Inc. (1994), 93 Ohio App.3d 407, 412.
[11] Black's Law Dictionary (8 Ed.Rev.2004) 237.
[12] App.R. 12(A)(1)(c).