OPINION
{¶ 1} Appellant, Nancy S. Jacobs, appeals from the February 12, 2007 judgment entries of the Trumbull County Court of Common Pleas, granting directed verdicts to appellees/cross-appellants, Edward Politsky, Nicholas Border, IUE-CWA *Page 2 
Local 717, and Anthony Budak. Appellees/cross-appellants appeal from the February 11, 2005 judgment entry denying their motion to dismiss and the court's denial of their motion for directed verdict made at the end of the plaintiffs case in chief. For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural Facts
 {¶ 3} This case has a long and tortured procedural history and returns on appeal after we reversed on summary judgment and remanded for further proceedings in Jacobs v. Budak, 156 Ohio App. 3d 160, 2004-Ohio-522("Jacobs I").
 {¶ 4} Appellant/cross-appellee ("Ms. Jacobs") filed a complaint on August 14, 1998, in the Trumbull County Court of Common Pleas, alleging, inter alia, claims of libel per se and libel per quod against appellees/cross-appellants (hereinafter collectively referred to as "Mr. Budak" unless otherwise specified) for an allegedly defamatory article that was authored by Mr. Budak and published in the September 1997 union newsletter, "Local 717 Union News."
 {¶ 5} At the time of the incident Ms. Jacobs and all of the appellees were employed by Delphi Packard Electric Systems ("Delphi"). Ms. Jacobs was the supervisor of the midnight maintenance crew and oversaw approximately thirty employees, whose duties included material handling, maintenance, and truck driving. Mr. Budak was an elected official for the International Union of Electrical Workers AFL-CIO Local 717 (the "union"), whose duties included contract negotiating and resolving conflicts between employees and management.
 {¶ 6} In the September union newsletter Mr. Budak authored an article entitled "Sub District `B' Committee Report," which contained a sub-section that concerned Ms. Jacobs, entitled "Midnight Cowgirl." The article described the procedure Ms. Jacobs *Page 3 
used to document and provide access to records regarding equalization of overtime. The article then accused her of not following the administrative equalization records procedure as outlined in the collective bargaining agreement between management and the union. The article alleged that Ms. Jacobs was incorrectly entering overtime hours and restricting access to the equalization records. The article went on to state that "[i]n effect [Ms. Jacobs] is saying that midnight workers,all of the people she works with, are untrustworthy!" It then compared her to a "midnight cow girl" who was attempting to "act like the Lone Ranger by creating, in essence a separate contract which suits herself." (Emphasis added.)
 {¶ 7} Following the publication of the article, Ms. Jacobs was subjected to callow harassment by her employees and fellow co-workers. Ms. Jacobs testified that the harassment lasted for a period of two to three months following the publication of the article and that she was subjected to numerous cat-calls and "mooing" sounds as she walked or drove her scooter through the plant. She received prank phone calls where unidentified persons would yell such quips as "yippy-ti-yi-o," "moo-ooo", and "got your spurs on." In addition, cow horns and a cowboy hat were placed on her work scooter subjecting her to further ridicule as she drove through the plant.
 {¶ 8} In the aftermath of this article, Ms. Jacobs filed this suit against Mr. Budak; Mr. Nicholas Border ("Mr. Border"), editor-in-chief of the newsletter; Mr. Edward Politsky ("Mr. Politsky"), editor of the newsletter; and the union, IUE-CWA Local 717. In her complaint, Ms. Jacobs alleged that the publication was false, and that in addition to being subjected to harassment, she suffered mental anguish, humiliation, a great loss of professional standing and reputation, and that her medical conditions were further exacerbated by the resulting stress. *Page 4 
 {¶ 9} Mr. Budak filed a notice of removal in the United States District Court for the Northern District of Ohio, Eastern Division, asserting federal jurisdiction based on preemption, pursuant to Section 301 of the Labor Relations Management Act ("LRMA"), 29 U.S.C. § 185. The federal district court remanded the case, finding that the grounds for removal to federal court were insufficient as Ms. Jacobs' libel claim did not require an interpretation of the collective bargaining agreement. Thus, her claims were not preempted by Section 301 of the LRMA.
 {¶ 10} After remand, Mr. Budak filed a motion for summary judgment, arguing that Ms. Jacobs' claims were preempted by Section 301 of the LRMA, that the article did not defame Ms. Jacobs, and further, that even if the statements were defamatory, they did not rise to the level of "actual malice." The trial court granted summary judgment in favor of Mr. Budak, determining that the defamatory statements constituted "libel per quod," and that as such, Ms. Jacobs was required to present evidence of special damages, which she failed to do. Ms. Jacobs subsequently appealed.
 {¶ 11} Thus, in the first appeal presented to this court, JacobsI, which reversed the summary judgment in favor of the defendants, we determined that the article depicted factual representations and not protected opinions.
 {¶ 12} We also determined that Ms. Jacobs had presented sufficient evidence and raised a genuine issue of material fact as to the first three elements of a libel claim for purposes of defeating summary judgment, specifically, whether there was a false and defamatory statement made about the plaintiff which was published without a privilege to a third party; thus, leaving these issues for determination by the trier of fact.
 {¶ 13} In analyzing the fourth element of a libel claim, we held that this dispute is properly classified as a "labor dispute" inasmuch as the dispute focuses on the *Page 5 
statements concerning the procedure employed by Ms. Jacobs in the maintenance of the equalization records. As such, we determined that the appropriate level of fault required to sustain a libel claim in this context is actual malice, and that Ms. Jacobs had presented sufficient evidence to create a genuine issue of material fact regarding whether the defendants acted with actual malice; thus, leaving this issue for determination by the trier of fact.
 {¶ 14} Finally, we determined that the statements constituted libel per se. Consequently, we found that Ms. Jacobs was not required to plead or prove special damages. We further found that the evidence presented by Ms. Jacobs created a genuine issue of material fact regarding whether she had been subjected to ridicule as a result of the article.
 {¶ 15} The case was remanded to the trial court for further proceedings.
 {¶ 16} After our remand, Mr. Budak filed a motion to dismiss reiterating his argument that the trial court did not have subject matter jurisdiction since this case involved a collective bargaining agreement, and was thus preempted by Section 301 of the LRMA. The trial court overruled the motion on February 11, 2005, determining that the case was properly before the court since Ms. Jacobs' claims sound in common law tort, not violations of the collective bargaining agreement.
 {¶ 17} Mr. Budak then filed two motions in limine. In his first motion Mr. Budak sought to exclude evidence of any emotional distress and/or damages suffered by Ms. Jacobs from the instant case. Mr. Budak argued in his second motion that the trial court was required to follow the law of the case in Jacobs I. Thus, Mr. Budak was arguing for a clarification that Ms. Jacobs should be required to prove by clear and convincing evidence "actual malice" and actual damages. In response to the second motion, Ms. *Page 6 
Jacobs argued that we did not find this to be a labor dispute. Rather, Ms. Jacobs argued that we determined the statements in this case constituted libel per se, and as such, she was not required to prove actual malice or damages.
 {¶ 18} After holding a hearing on the motions, the trial court issued a judgment entry granting Mr. Budak's first motion in limine, which was unopposed and based on the theory that anxiety and/or stress resulting from the litigation process does not form a separate basis for recovery since the plaintiff who chooses to pursue litigation is "cognizant of both the economic and emotional costs that it will entail."
 {¶ 19} As to Mr. Budak's second motion, the trial court determined that a motion in limine was not the appropriate vehicle to address the issue Mr. Budak raised. However, the court proceeded to resolve the issue prior to trial since the issue related to the presentation of evidence and the instructions to the jury. The court found that inJacobs I, we determined this case involved a labor dispute. Accordingly, the trial court held that Ms. Jacobs was required to prove by clear and convincing evidence that the defamatory statement was published with actual malice causing her actual damage.
 {¶ 20} The case was tried before a jury. Over the four days of trial, Ms. Jacobs presented the testimony of eight witnesses:[1] Ms. Judy Hartman and Ms. Tammy Tyma ("Ms. Tyma"), equalization records clerks; Dr. Meyers ("Dr. Meyers"), Ms. Jacobs' family physician; Ms. Janet Shaffer, a maintenance dispatcher; Mr. John Gerner, an employee under the supervision of Ms. Jacobs; Mr. James A. Pitt, Sr., supervisor of material handling; Mr. David Switz, Ms. Jacobs' husband; and Ms. Jacobs. Ms. Jacobs also *Page 7 
called appellees for cross-examination during their case in chief, calling Mr. Politsky, Mr. Budak, and Mr. Border to the stand.
 {¶ 21} At the close of Ms. Jacobs' case, the court granted Mr. Budak's motions for directed verdicts as to appellees, Mr. Politsky, Mr. Border, and the union, determining that Ms. Jacobs failed "to produce evidence sufficient to rise to the standard of clear and convincing evidence of actual malice or actual damage which would be required to allow the jury to find for Plaintiff against these defendants."
 {¶ 22} Mr. Budak then presented the testimony of Mr. Budak, Dr. Benjamin Hayak, who reviewed Ms. Jacobs' medical history; Ms. Karen Corbin, registered nurse for Delphi; Mr. Ron Presco, a tool room employee; Mr. John Molnar ("Mr. Molnar"), the midnight shift committeeman for the union; Mr. Ken Niles, sub chairman of the union; and then read to the jury the depositions of Dr. Basciano, a former physician of Ms. Jacobs, and Dr. Joseph Edwards, her psychologist.
 {¶ 23} After the defense rested, the court granted Mr. Budak's motion for a directed verdict as to Mr. Budak. The court found Ms. Jacobs failed "to produce evidence sufficient to rise to the standard of clear and convincing evidence of actual malice or actual damage which would be required to allow the jury to find for Plaintiff." Thus, the court ultimately granted a directed verdict in favor of all appellees.
 {¶ 24} Ms. Jacobs timely filed an appeal and Mr. Budak responded and submitted a cross-appeal.
 {¶ 25} Ms. Jacobs raises two assignments of error:
 {¶ 26} "[1.] The trial court erred and abused its discretion in directing verdicts for all appellees and flagrantly violating the previous February 9, 2004 ruling of this appellate court mandating that it apply a standard of libel per se instead of libel per *Page 8 
quod in this case and in depriving appellant Jacobs of the right to a jury trial with proper instructions.
 {¶ 27} "[2.] Alternatively, the trial court erred and abused its discretion in directing verdicts for all appellees and in refusing to allow the case to be considered by the jury with proper instruction for consideration under the libel per quod standard."
 {¶ 28} Law of the Case
 {¶ 29} Initially, we note we are bound to follow the law of the case set forth in Jacobs I. The Supreme Court of Ohio described the "law of the case" doctrine in Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3-4, stating, "[t]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. * * * Moreover, the trial court is without authority to extend or vary the mandate given." (Citations omitted.) Weller v. Weller, 11th Dist. Nos. 2006-G-2723 and 2006-G-2724, 2007-Ohio-4964, at ¶ 15.
 {¶ 30} In Jacobs I, we noted that the appellant's arguments were applicable to all of the appellees. Thus, we stated that "although the vast majority of appellant's argumentation references only appellee, Anthony Budak, these arguments are equally applicable to the other parties on appeal. At this time, we are unable to say that appellant's arguments were not raised against all appellees by clear implication. To hold otherwise would be a manifest injustice. This, however, by no means precludes *Page 9 
the trial court from further addressing each defendant's individual liability on remand." Id. at ¶ 2.
 {¶ 31} As noted earlier, and despite some interpretational twisting in the parties' briefs, the court in Jacobs I clearly determined that the article depicted factual representations and not protected opinions.
 {¶ 32} We also determined that Ms. Jacobs had presented sufficient evidence of a genuine issue of material fact as to the first three elements of a libel claim for purposes of defeating summary judgment, specifically, whether there was a false and defamatory statement made about the plaintiff which was published without a privilege to a third party; thus, leaving these issues for determination by the trier of fact.
 {¶ 33} In analyzing the fourth element of a libel claim, we held that this dispute is properly classified as a "labor dispute" inasmuch as the dispute focuses on the statements concerning the procedure employed by Ms. Jacobs in the maintenance of the equalization records. As such, we determined that the appropriate level of fault required to sustain a libel claim in this context is actual malice, and Ms. Jacobs had presented sufficient evidence to create a genuine issue of material fact regarding whether the defendants acted with actual malice; thus, leaving this issue for determination by the trier of fact.
 {¶ 34} Finally, we determined that the statements constituted libel per se. Consequently, we found that Ms. Jacobs was not required to plead or prove special damages. We further found that the evidence presented by Ms. Jacobs created a genuine issue of material fact regarding whether she had been subjected to ridicule as a result of the article. *Page 10 
 {¶ 35} Thus, upon remand Ms. Jacobs was required to prove by clear and convincing evidence that there was a false and defamatory statement made about the plaintiff which was published without a privilege to a third party. See Lansdowne v. Beacon Journal Publishing Co. (1987),32 Ohio St. 3d 176, 178-180 as to the standard of proof required.
 {¶ 36} We determined as a matter of law that this controversy was a "labor dispute;" therefore, the "actual malice" standard is applicable. See Dale v. Ohio Civil Service Employees Association (1991),57 Ohio St. 3d 112, at paragraph two of the syllabus. Thus, upon remand Ms. Jacobs was required to prove by clear and convincing evidence that Mr. Budak acted with actual malice.
 {¶ 37} Since we decided as a matter of law that the statements constituted libel per se rather than libel per quod, upon remand Ms. Jacobs was not required to prove special damages. "Special damages" are those "occasioned by the special character, condition, or circumstance of the person wronged. They are presumed by the injury. They must be specially pleaded and must be proved by competent evidence," as opposed to general damages "which flow as a conclusion of law from the injury suffered. They are presumed by the injury and need not be pleaded or proved." Robb v. Lincoln Publishing (Ohio), Inc. (1996),114 Ohio App.3d 595, 622, citing 22 American Jurisprudence 2d, Damages, Sections 36-39.
 {¶ 38} Although we determined the form of libel as a matter of law, upon remand Ms. Jacobs was still required to prove that she had been subjected to ridicule as a result of the article. In other words, Ms. Jacobs was still required to prove that she suffered "actual damage" as a direct and proximate result of the publication of the article. SeeDale, supra, at 114-115, citing Linn v. United Plant Guard Workers
(1966), 383 U.S. 53. *Page 11 
 {¶ 39} Directed Verdict
 {¶ 40} In both of her assignments of error, Ms. Jacobs contends that the trial court abused its discretion and erred in granting a directed verdict for Mr. Budak.
 {¶ 41} "Pursuant to Civ. R. 50(A)(4), `[w]hen a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Bliss v.Chandler, 11th Dist. No. 2006-G-2742, 2007-Ohio-6161, ¶ 46.
 {¶ 42} "Under this rule, a trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant." Id. at ¶ 47, citingHuffman v. Kazak Bros. Inc., 11th Dist. No. 2000-L-152, 2002-Ohio-1683, 2002 Ohio App. LEXIS 1660, 10, citing Fleegle v. Funtime, Inc. (Sept. 30, 1999), 11th Dist. No. 98-G-2158, 1999 Ohio App. LEXIS 4640, 7.
 {¶ 43} The "reasonable minds" test requires the court to determine whether there is any evidence of substantial probative nature to support the adverse party's claim. Hamden Lodge v. Ohio Fuel Gas Co. (1934),127 Ohio St. 469. "A motion for a directed verdict does not present a question of fact or raise factual issues; rather, it presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence." Bliss at ¶ 48, citing Huffman at 10, citingRuta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, paragraph one of the syllabus. *Page 12 
 {¶ 44} The Supreme Court of Ohio has explained the method that should be employed in deciding a motion for a directed verdict:
 {¶ 45} "When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove." Bancroft v. Warren (Dec. 11, 1998), 11th Dist. No. 98-A-0005, 1998 Ohio App. LEXIS 5973, 9, quotingRutta at 68-69.
 {¶ 46} "Because a motion for a directed verdict presents a question of law, an appellate court must conduct a de novo review of the trial court's judgment." Bliss at ¶ 48, citing Huffman at 10, citingNichols v. Hanzel (1996), 110 Ohio App. 3d 591, 599.
 {¶ 47} As we stated in Jacobs I, "[w]ritten defamation is referred to as libel." Jacobs I at ¶ 20, citing Strussion v. Akron Beacon JournalPublishing Co., 9th Dist. No. 20833, 2002-Ohio-3200, ¶ 18. "Libel is generally defined as `a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business, or profession." Id., citing AB-Abell Elevator Co. v. Columbus/Cent. OhioBldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 7. *Page 13 
 {¶ 48} Further, "[t]o prevail on a libel claim, a plaintiff must prove five elements: `(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the plaintiff [libel per quod].'" Jacobs I at ¶ 50, citing Gosden v. Louis (1996),116 Ohio App. 3d 195, 206.
 {¶ 49} In Lansdowne, supra, the Supreme Court of Ohio took a further step, which imposed a higher burden of proof upon a plaintiff in a defamation case by "imposing a `clear and convincing' standard of proof on plaintiffs in all defamation cases." Dale v. Ohio Civil ServiceEmployees Assoc. (1991), 57 Ohio St.3d 112, 114, citingLansdowne at 178-180.
 {¶ 50} Libel in a Labor Dispute
 {¶ 51} Libel per se Versus Libel per quod
 {¶ 52} In her first assignment of error, Ms. Jacobs alleges that the trial court abused its discretion and erred in granting Mr. Budak's motion for a directed verdict as to all appellees. Specifically, Ms. Jacobs argues that the trial court incorrectly applied the law of the case in Jacobs I by applying a libel per quod standard instead of libel per se. Thus, Ms. Jacobs argues she is not required to prove actual malice or that she suffered actual damages. Ms. Jacobs further argues that the actual malice standard should not be applied since the dispute is only tangential to the collective bargaining argument. Thus, the argument should not be held to the same standards or categorized as a "bona fide labor dispute." We find these arguments to be without merit.
 {¶ 53} Ms. Jacobs argues in both her first and second assignments of error that the law of the case in Jacobs I was misconstrued and that the trial court incorrectly applied the standard libel per quod. In her second assignment of error, she argues that *Page 14 
in the alternative, the case should have been considered by the jury under a libel per quod instruction. Since these issues are intertwined and deal with the distinction between libel per se and libel per quod and its bearing on this case, we will address these assignments of error together.
 {¶ 54} The difference between libel per quod and libel per se was explained by the Supreme Court of Ohio in Becker v. Toulmin (1956),165 Ohio St. 549, 556: "libel per se means libel of itself, or upon the face of a publication, whereas libel per quod is libel by an interpretation, through an innuendo, between an innocent or harmless meaning and a libelous one." Jacobs I at ¶ 77.
 {¶ 55} "This distinction is relevant due to its effect upon the type of damages a plaintiff must prove to have resulted from the libel. Libel per quod is not actionable absent proof of special damages." Id. at ¶ 78, quoting Shifflet at 186. "Special damages are those occasioned by the special character, condition, or circumstances of the person wronged. They are not presumed by the injury. They must be specially pleaded and must be proved by competent evidence." Id., citingRobb at 622.
 {¶ 56} "On the other hand, statements that are libelous per se presume the existence of damages and, thus, a plaintiff would not be required to plead and prove special damages." Id. at ¶ 79, citing Gosden at 207. "Specifically, `written matter is libelous per se if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt; or in a manner that will injure him in his trade or profession." Id., quoting Gosden at 207, citingBecker at 553. "When a writing is not ambiguous, the question of whether it is libelous per se is for the court." Id. *Page 15 
 {¶ 57} In Jacobs I, we found that Ms. Jacobs had sufficiently pled a claim of libel and raised a genuine issue of material fact as to the veracity of Mr. Budak's statements to survive summary judgment. Ms. Jacobs is correct in her assertion that as a matter of law we determined Mr. Budak's statements to be libel per se. Specifically we stated, "[u]pon careful review, we find that the statements within Mr. Budak's article constitute libel per se. The statements at issue unambiguously and on their face reflected upon appellant's character as a supervisor."Jacobs I at ¶ 80. Thus, if this was a generic common law defamation claim Ms. Jacobs would not be required to prove actual malice or that she suffered actual damages as a result.
 {¶ 58} Libel per se, Labor Disputes Actual Malice
 {¶ 59} However, the requirement that Ms. Jacobs prove actual malice does not arise from applying a standard of libel per quod versus libel per se. Rather, she is required to prove actual malice even though the statements on their face constitute libel per se because this controversy concerns a labor dispute, which requires a higher standard of proof in that the plaintiff must prove actual malice by clear and convincing evidence.
 {¶ 60} The Supreme Court of the United States in New York Times Co. v.Sullivan (1964), 376 U.S. 254, "established an even stricter rule for certain defamation cases. The stricter rule has come to be known as the actual malice standard." Id. "A statement is published with actual malice when it is made with the `the knowledge that it was false or with reckless disregard of whether it was false or not." Jacobs I at ¶ 70, citing Dale at 117, quoting New York Times at 279-280.
 {¶ 61} In Linn, supra, the United States Supreme Court extended the application of the "actual malice" standard set forth in New York TimesCo., which was established *Page 16 
to protect the freedom of speech in public official defamation cases, to state law defamation claims that arose out of labor disputes that are under the jurisdiction of the National Labor Relations Board ("NLRB").
 {¶ 62} Thus, the trial court correctly followed the law of the case in holding that Ms. Jacobs was required to prove not only that the statements were false, but that they were made with actual knowledge or reckless disregard as to their falsity. In this respect, the trial court properly granted a directed verdict to appellees Mr. Politsky, Mr. Border, and the union at the close of Ms. Jacobs' case; and Mr. Budak at the close of appellees' case, since Ms. Jacobs failed to provide clear and convincing evidence that Mr. Budak's statements were made with knowledge of their falsity, or with a reckless disregard as to their truthfulness.
 {¶ 63} As to appellees Mr. Politsky, Mr. Border, and the union, and construing the evidence most strongly in Ms. Jacobs' favor, we have determined that Ms. Jacobs provided no evidence, clear and convincing or otherwise, that they approved the publication of these statements with any reckless disregard for its truthfulness. Mr. Politsky, as editor of the union newsletter, had no responsibilities for the actual content of the newsletter. Rather, his duties involved marketing and advertising. Mr. Border, who was the local union president at Delphi at the time of the incident, as well as editor-in-chief of the newsletter, was in charge of reviewing articles turned in for publication for spelling, punctuation, and the like primarily from an editorial perspective. Accordingly, he inquired as to the veracity of the statements at the time Mr. Budak gave him the article and had no reason to doubt the truthfulness of Mr. Budak's statements or investigate further. *Page 17 
 {¶ 64} "Actual malice `cannot be implied from the character and content of a publication. * * * It is not sufficient for a libel plaintiff to show that an interpretation of facts is false; rather, he must prove with convincing clarity that defendant was aware of the high probability of falsity.'" AB-Abell Elevator Co. at 13, citing Jacobs v. Frank
(1991), 60 Ohio St.3d 111, 118-119. Furthermore, "[m]ere negligence is not enough to establish actual malice." Id., citing Dale at 118. "Thus, `reckless conduct is not measured by whether a reasonably prudent man * * * would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" Id., citing St.Amant v. Thompson (1968), 390 U.S. 727, 731.
 {¶ 65} Thus, there is no evidence of direct knowledge or even reckless disregard of the falsity of Mr. Budak's statements on the part of Mr. Politsky, Mr. Border, and the union. Nor was it reckless for Mr. Border to rely on Mr. Budak in publishing the newsletter. Mr. Budak was a union official who handled and investigated grievance complaints such as the equalization records procedure. Thus, Mr. Border had no reason to doubt the veracity of the statements. While Mr. Border may have been negligent or used poor judgment in publishing the article, particularly in allowing a caption such as "Midnight Cowgirl," we cannot say that any of the appellees acted with a knowing or reckless disregard for the truth. "Mere negligence is not enough to establish actual malice."Dale at 118. Indeed, the failure to investigate has been found to constitute malice only "where the defendant has serious doubts that thestatement is true." Id. at footnote 3. (Emphasis added.)
 {¶ 66} At the close of appellees' case, the trial court properly granted a directed verdict in favor of Mr. Budak as well, finding that Ms. Jacobs failed to prove by clear and *Page 18 
convincing evidence that Mr. Budak made these statements with actual malice or that she suffered actual damages as a result.
 {¶ 67} The evidence presented at trial revealed that Mr. Budak learned about Ms. Jacobs' alleged improper equalization records practices from his supervisor. He approached and discussed the issue with Mr. Molnar, the union committeeman for the midnight shift, the employee-complainant, Ida Burzenski ("Ms. Burzenski"), and Ms. Jacobs. Although Ms. Jacobs submitted evidence that Mr. Budak's investigation was conducted negligently in that he did not investigate the other shifts' access to the equalization records, Mr. Budak did submit evidence that his article did have some basis in fact and we find no evidence that Mr. Budak had any serious doubts as to the veracity of the statements. Mr. Budak, in part, relied on Ms. Burzenski's numerous complaints which, although denied after investigation, were confirmed in part by his conversation with the equalization clerk, Ms. Tammy Tyma (formerly known as Ms. Campbell). Ms. Tyma testified that she was familiar with Ms. Burzenski's complaints and that there were discrepancies in the equalization records procedure employed by Ms. Jacobs. She also testified that there were other complaints regarding Ms. Jacobs' administration of overtime, and that she had discussed the issue not only with Ms. Jacobs, but with Ms. Jacobs' supervisor and Mr. Molnar as well.
 {¶ 68} It is clear that access to equalization records was an ongoing debate as the issue was discussed in union-management meetings before, during, and after the article was released. Indeed, Mr. Budak was not even familiar with Ms. Jacobs until he was ordered to investigate Ms. Burzenski's complaints in early May of 1997 by his supervisor. Although the statements were certainly negligently made, we cannot say that they were made with such reckless disregard or knowledge as to their falsity. *Page 19 
 {¶ 69} Furthermore, Ms. Jacobs was required to prove by clear and convincing evidence that she suffered actual damages as a result of the defamatory statements. In Linn, supra, the United States Supreme Court, in determining that the NLRA did not preempt state defamation labor dispute cases, explicitly recognized that some states, such as Ohio, distinguish between libel per se and libel per quod. In doing so, the court refused to apply this distinction to labor disputes, noting that "[w]e adopt this terminology to avoid confusion with the concept of libel per se, applied in many States simply to designate words whose defamatory nature appears without consideration of extrinsic facts. Although Linn's complaint alleges that the leaflets were `libelous per se,' his failure to specify the manner in which their publication harmed him indicates that he meant to rely on the presumption of damages. Under our present holding Linn must show that he was injured by thecirculation of the statements * * *." Linn at footnote 2. (Emphasis added.)
 {¶ 70} Ms. Jacobs not only failed to clearly and convincingly prove that Mr. Budak's statements were made with actual malice, but she failed in her proof that she suffered actual damage as a result. As evidenced by the numerous medical records that were entered into the record, Ms. Jacobs has a long history of physical and mental distress that may or may not have been exacerbated by this incident. According to her employment evaluations and her own testimony, her employment was unaffected. Indeed, following the release of the article she was given a six percent raise and has been consistently rated in her job performance as "satisfactory" or above. The testimony and medical records Ms. Jacobs did submit failed to evidence that the article was the proximate cause for the stress she was facing at that time. Indeed, Ms. Jacobs' *Page 20 
own physician, Dr. Meyers, could not differentiate between the stress that was caused by the article and the stress that resulted from the ensuing legal battle.
 {¶ 71} Although we understand that the juvenile ridicule from her co-workers following the release of the article resulted in some humiliation and embarrassment, the law sets a high bar in these cases and Ms. Jacobs has failed to provide clear and convincing evidence that her medical symptoms and emotional distress or the exacerbation of any pre-existing conditions were directly and proximately caused by the article.
 {¶ 72} Labor Dispute
 {¶ 73} Ms. Jacobs also argues that the standard of actual malice should not be applied since this is not a bona fide labor dispute. Ms. Jacobs argues that even if there was a labor dispute as to the access of equalization records, it was resolved before the article was published and disseminated. She further argues that the dispute cannot be categorized as a "labor dispute" because no formal grievance process was initiated to investigate Ms. Burzenski's complaints. We disagree with this argument, finding that the trial court properly followed the law of the case in Jacobs I where we determined this to be a labor dispute.
 {¶ 74} In Dale, supra, the Supreme Court of Ohio clarified the definition of a "labor dispute" as "any controversy over the terms and conditions of employment or the representation of employees for collective bargaining purposes, regardless of whether the disputants stand in the relation of employer and employee, and regardless of whether the dispute is subject to the jurisdiction of the National Labor Relations Board, the State Employment Relations Board, or some other administrative agency." Id. at 116. Thus, the court held that "the `actual malice' standard of New York Times v. *Page 21 Sullivan applies to defamation claims founded upon statements made by and about participants in a public-sector dispute * * *." Id. at 117.
 {¶ 75} We found this applicable to the instant case in Jacobs I
"[b]ecause this controversy concerns the maintaining of terms and conditions of employment as stated in the collective bargaining agreement, it is properly classified as a labor dispute." Jacobs I
at ¶ 69. We determined that since this dispute arose from the procedures found in the collective bargaining agreement, and because Mr. Budak alleged in his article that Ms. Jacobs was not, in effect, complying with the agreement, this controversy is a labor dispute. "The term "labor dispute" includes any controversy concerning terms, tenure or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether thedisputants stand in proximate relation of employer and employee.'"
(Emphasis sic). Jacobs I at ¶ 68, citing Dale at 115, quoting Section 152[9], Title 29, U.S.C.
 {¶ 76} We fail to see how this controversy could be labeled as anything but a labor dispute since Mr. Budak's accusations are inextricably intertwined with the equalization records access procedure outlined in the collective bargaining agreement, and whether Ms. Jacobs, in her capacity as a supervisor, was correctly following that procedure. See, also, Heinlen v. Ohio Civil Services Assoc. (March 27, 2002), 3d No. 9-01-58, 2002 Ohio App. LEXIS 1383, where the court determined that a claim for defamation based on statements made in a union newsletter was a labor dispute and accordingly applied the actual malice standard.
 {¶ 77} As the Supreme Court of Ohio stated in Dale, "the policy of encouraging `free and vigorous discussion of labor relations issues' * * * requires that participants be *Page 22 
allowed considerable latitude for the `* * * bitter and extreme charges, countercharges, unfounded rumor, vituperations, personal accusations, misrepresentations and distortions'[.]" Id. at 116, citing Linn at 58.
 {¶ 78} Thus, we hold that Ms. Jacobs has failed to produce sufficient evidence for this case to go to the jury. The motion for directed verdict must be granted if there is no "substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions.'" Davis v.Safe Auto Ins. Co. (March 31, 2000) 11th Dist. No. 98-A-0103, 2000 Ohio App. LEXIS 1385, 11, citing Hawkins v. Ivy (1977), 50 Ohio St.2d 114,115, Cater v. Cleveland (1998), 83 Ohio St.3d 24, 33.
 {¶ 79} Ms. Jacobs' first and second assignments of error are without merit.
 {¶ 80} Appellees/Cross-Appellants' Assignments of Error
 {¶ 81} Mr. Budak raises three assignments of error in this appeal:
 {¶ 82} "[1.] The trial court erred when it denied Defendants' motion to dismiss based on preemption.
 {¶ 83} "[2.] The trial court erred when it denied Defendants' motion for directed verdict.
 {¶ 84} "[3.] The trial court erred when it denied Defendants' motion to strike Dr. Meyer's testimony."
 {¶ 85} Preemption
 {¶ 86} In his first and second assignments of error, Mr. Budak argues that the trial court erred in determining that this dispute was not preempted by federal law. Specifically, Mr. Budak argues that this is a labor dispute that requires interpretation of the collective bargaining agreement. Thus, Mr. Budak contends that that the trial court *Page 23 
lacked subject matter jurisdiction since labor disputes are federally preempted by the NLRA. We find this argument to be without merit. Accordingly, we determine that the trial court properly overruled Mr. Budak's motion to dismiss and motion for a directed verdict based on this preemption argument.
 {¶ 87} We review both a motion to dismiss and a motion for a directed verdict de novo. "An appellate court's standard of review for a trial court's actions regarding a motion to dismiss is de novo."Bliss at ¶ 91, citing State ex el. Malloy v. City of Girard, 11th Dist. No. 2006-T-0019, 2007-Ohio-338, ¶ 8, citing Clark v. Alberini, 11th Dist. No. 2001-T-0015, 2001-Ohio-8736. As we stated above in reviewing Ms. Jacobs' assignments of error, "[b]ecause a motion for a directed verdict presents a question of law, an appellate court must conduct a de novo review of the trial court's judgment." Bliss at ¶ 48, citingHuffman at 10, citing Nichols at 599.
 {¶ 88} Although Mr. Budak is correct in his assertion that labor disputes are preempted by federal law, namely, the NLRA, the United States Supreme Court discussed and dismissed the notion that defamation claims in labor disputes are federally preempted. In Linn, supra, the court rejected this argument, explaining that: "`where the activity regulated was a merely peripheral concern of the Labor Management Relations Act * * * or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." Id. at 59, citing SanDiego Building Trades Council v. Garmon (1959) 359 U.S. 236, 243-244.
 {¶ 89} In order to ensure that the competing interests of defamation and open discourse in labor disputes are both balanced and protected, the court extended the *Page 24 
actual malice standard that was set forth in New York Times for public officials to apply to labor disputes as well, but added some constraints vis-a-vis application of state law as to damages. "In order that the recognition of legitimate state interests does not interfere with effective administration of national labor policy the possibility of such consequences must be minimized. We therefore limit the availability of state remedies for libel to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage." Id. at 64-65. Thus, with respect to preemption by the NLRA, the court specifically held that a defamation claim is properly within the subject matter jurisdiction of the state courts and that the plaintiff must prove actual malice and evidence actual damage.
 {¶ 90} The issue is not whether the defamatory statements are libel per quod or libel per se, as Ms. Jacobs contends, nor are these claims preempted by federal law as Mr. Budak contends. Rather, the Supreme Court of the United States was clear in its holding in Linn that defamation claims that involve labor disputes are properly within the subject matter jurisdiction of the state, and that because there is such a high degree of importance in protecting the freedom of speech in the context of a labor dispute, the plaintiff is required to prove actual malice from which she suffered actual damages as a result. TheLinn court balanced competing and conflicting interests and developed rules that allow redress "without curtailment of state libel remedies beyond the actual needs of national labor policy." Id. at 67. In this way, encroachment on one's right to a remedy in defamation cases, generally within the province of the states, and the purposes of federal labor policies and free speech are not impeded. *Page 25 
 {¶ 91} Thus, there is no question that this case is properly within the subject matter jurisdiction of this court.[2]
 {¶ 92} Accordingly, we find that the trial court properly overruled both Mr. Budak's motion to dismiss and motion for a directed verdict on the issue of preemption.
 {¶ 93} Mr. Budak's first and second assignments of error are without merit.
 {¶ 94} Admission of Evidence
 {¶ 95} In his third assignment of error, Mr. Budak asserts that the trial court erred in denying his motion to strike the testimony of one of Ms. Jacobs' physicians, Dr. Meyers. Specifically, Mr. Budak contends that Dr. Meyers' testimony violated the trial court order prohibiting Ms. Jacobs from offering evidence of her stress that was caused solely by the lawsuit.
 {¶ 96} "The admission or exclusion of evidence rests in the sound discretion of the trial court." Bliss at ¶ 98, citing Sedivy v.Sedivy, 11th Dist. Nos. 2006-G-2687 and 2006-G-2702, 2007-Ohio-2313, ¶ 48, citing State v. Sage (1987), 31 Ohio St.3d 173, 180. "Therefore, we will not reverse the trial court's decision to exclude this evidence unless it is determined that the trial court abused its discretion in doing so." Id., citing Sedivy at ¶ 48, citing State v. Kimble, 11th Dist. No. 2006-T-0086, 2006-Ohio-6836, ¶ 8, citing State v. Benson, 11th Dist. No. 2001-P-0086, 2002-Ohio-6942, ¶ 7.
 {¶ 97} During trial, Dr. Meyers testified as to Ms. Jacobs' medical history. Ms. Jacobs first consulted Dr. Meyers on October 27, 1998, one year after the incident, *Page 26 
complaining of migraines, fatigue, stress, and depression. She did generally indicate that part of her stress arose from her employment, but she made no mention of the lawsuit to Dr. Meyers until several years later. Indeed, the first mention of the lawsuit in her chart was a notation from her visit on May 17, 2005.
 {¶ 98} Mr. Budak takes issue with the following testimony of Dr. Meyers that was elicited during cross-examination by Mr. Budak's counsel in the following colloquy:
 {¶ 99} "Mr. Haines: And could you refer to page 97 of your deposition? Is it fair to say that at that time in discussing the difference between the stress of this, over this article and the stress of this lawsuit, you indicated that in your mind, you really can't separate out the two?"
 {¶ 100} "Dr. Meyers: No, sir. I mean that is correct, I can't separate between the two."
 {¶ 101} "Mr. Haines: And even the testimony that you are giving today, you can't really state to a reasonable degree of probability, you can't really separate out the lawsuit from the incident with respect to what causes what?"
 {¶ 102} "Dr. Meyers: It is difficult to separate the two, because they channel into one at one point or at some point."
 {¶ 103} "Mr. Haines: You can't separate out the difference between what somebody put in a letter in 1997 and the lawsuit that Ms. Jacobs filed?"
 {¶ 104} An in-chambers hearing followed Dr. Meyers' testimony where Mr. Budak made a motion to strike the testimony since Dr. Meyers had given his opinion that he could not differentiate between the stress caused by the lawsuit and the stress caused by the article. Thus, Mr. Budak argued that Dr. Meyers' testimony should be stricken *Page 27 
since the stress that Ms. Jacobs' endured was not quantified as to its origins. Thus, Dr. Meyers' entire testimony was tainted and violated the motion in limine.
 {¶ 105} The court overruled Mr. Budak's motion to strike, stating: "* * * Now on cross, paralleling the questions that were asked on the deposition, was a request for him to quantify, he said, `I can't do that.' Well, that doesn't give the jury much to go on. But the strident point here is he did say in his opinion, it would make an existing condition worse. That is enough for the jury to determine what, if how much worse, and for that reason, I'm going to allow that testimony in for that purpose. The jury has to decide the weight of the evidence, and I think they may have a difficult time coming up with much weight on that point, but there is some weight there that I think they have to determine and not me. It is not an absence of any evidence."
 {¶ 106} We cannot find that the admission of this limited testimony was an abuse of discretion in this case. Rather, the record reflects Dr. Meyers was one of the first witnesses to testify for Ms. Jacobs. At the time of his testimony, no other evidence or testimony had been submitted to the jury regarding Ms. Jacobs' injuries. Thus, the court at that juncture, appropriately overruled the motion to strike Dr. Meyers' testimony when he stated that he could not differentiate between the stress caused by the article and the stress of the lawsuit. Had Ms. Jacobs' submitted sufficient evidence of injury, this testimony would have gone to the weight of her injuries and whether they were caused by the article or the ensuing lawsuit. Thus, we cannot say the trial court abused its discretion.
 {¶ 107} Mr. Budak's third assignment of error is without merit.
 {¶ 108} The judgment of the Trumbull County Court of Common Pleas is affirmed. *Page 28 
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY OTOOLE, J., dissents with Dissenting Opinion.
[1] All witnesses are identified by the positions that they held at Delphi during the time of the incident in 1997.
[2] Although both parties claim that the federal district court's January 19, 2000 judgment entry, which dismissed the case, bolsters their claims, the federal district court denied Mr. Budak's motion for reconsideration of summary judgment because it was "without jurisdictionto proceed." Thus, the federal district court dismissed for want of jurisdiction since this is a common law claim of defamation, albeit in a labor dispute. See Jacobs 1, footnote 3.